UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                         Case Nos.     19-CR-17 & 19-CR-154

ZACHARY S. GAUTHIER,

        Defendant.

---

## PLEA AGREEMENT

---

1.      The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Timothy W. Funnell, Assistant United States Attorney, and the defendant, Zachary S. Gauthier, individually and by attorney Thomas G. Wilmouth, pursuant to Rules 11 and 20 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.      In Case No. 19-CR-17, the defendant has been charged in a three-count indictment, which alleges violations of Title 18, United States Code, Sections 2423(a), 2423(b), 2314, and 2. In Case No. 19-CR-154, the defendant has been charged in a one-count information, which alleges a violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2).

3.      The defendant has read and fully understands the charges contained in the indictment and information in the respective cases. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.     In Case No. 19-CR-154, the defendant voluntarily agrees to waive prosecution by indictment and transfer the prosecution from the Northern District of Alabama in order to plead guilty and be sentenced in the Eastern District of Wisconsin.

5.     The defendant voluntarily agrees to plead guilty to the following counts set forth in full as follows:

**CASE NO. 19-CR-17**
**COUNT ONE**

**THE GRAND JURY CHARGES:**

From on or about August 5, 2018, and continuing until on or about November 1, 2018, in the State and Eastern District of Wisconsin and elsewhere,

**ZACHARY S. GAUTHIER**

knowingly transported Minor Female A, who had not attained the age of 18 years, in interstate commerce from the state of Wisconsin to the states of Texas and Alabama, with the intent that Minor Female A engage in sexual activity for which Gauthier can be charged with a criminal offense under Texas Penal Code §§ 21.11(a) & 22.011, and Alabama Criminal Code §§ 13A-6-62 & 13A-6-67.

In violation of Title 18, United States Code, Section 2423(a).

**CASE NO. 19-CR-154**
**COUNT ONE**

**THE UNITED STATES ATTORNEY CHARGES:**

On or about November 2, 2018, in Walker County within the Northern District of Alabama, the defendant,

**ZACHARY SCOTT GAUTHIER**

did knowingly attempt to and did possess and access with intent to view a computer, computer disk, and any other material that contains an image of child pornography as defined in Title 18, United States Code, Section 2256(8)(A), that involved a minor who had not attained the age of 12 years, that has been mailed, and shipped and transported using any means and facility of interstate and foreign commerce, and that was produced using materials that had been mailed, and shipped and

2

transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2).

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 5. The parties acknowledge and understand that if these cases were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that the facts in Attachment A are true and correct, establish his guilt beyond a reasonable doubt, and support his agreement to pay restitution as set forth herein. The information in Attachment A is provided for the purpose of setting forth a factual basis for the defendant's guilt and agreement to pay restitution. It is not a full recitation of the defendant's knowledge of, or participation in, these offenses.

## PENALTIES

7. The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following statutory penalties:

- Count One in Case No. 19-CR-17: a minimum of 10 years' and a maximum of life imprisonment; a maximum fine of $250,000; a minimum of 5 years and a maximum of life on supervised release; a mandatory special assessment of $100; and a mandatory special assessment of $5,000 if the court determines that the defendant is non-indigent.

- Count One in Case No. 19-CR-154: a maximum of 20 years' imprisonment; a maximum fine of $250,000; a minimum of 5 years and a maximum of life on supervised release; a mandatory special assessment of $100; and a mandatory special assessment of $5,000 if the court determines that the defendant is non-indigent.

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss Counts Two and Three of the indictment in Case No. 19-CR-17 at the time of sentencing. Despite the dismissal of Count Three, the defendant agrees to pay restitution for the offense as set forth in this agreement.

3

## ELEMENTS

9.     The parties understand and agree that in order to sustain the charge of transporting a minor in interstate commerce with intent to engage in criminal sexual activity, as set forth in Count One of Case No. 19-CR-17, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant knowingly transported a minor in interstate commerce;
> Second, the minor was less than eighteen years of age at the time; and
> Third, the defendant intended that the minor engage in sexual activity which, if it had occurred, the defendant would have committed the criminal offenses under Texas and Alabama law, as defined in Attachment B, namely, indecency with a child and sexual assault of a child, in violation of Texas Penal Code §§ 21.11(a) & § 22.011, and rape in the second degree and sexual abuse in the second degree, in violation of Alabama Criminal Code §§ 13A-6-62 & 13A-6-67.

10.     The parties understand and agree that in order to sustain the charge of knowingly possessing child pornography, as set forth in Count One of Case No. 19-CR-154, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant knowingly possessed or knowingly accessed with intent to view, a computer, computer disk, or other material;
> Second, the material contained one or more images of child pornography;
> Third, the child pornography involved a pre-pubescent minor or a minor who had not attained 12 years of age;
> Fourth, the defendant knew both that the material contained child pornography and that one or more of the persons depicted in the material was a pre-pubescent minor or a minor who had not attained 12 years of age; and
> Fifth, the material has been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or was produced using materials that have been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## SENTENCING PROVISIONS

11.     The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

4

12.     The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13.     The defendant acknowledges and agrees that his attorney has discussed the potentially applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14.     The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

### Sentencing Guidelines Calculations

15.     The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

### Relevant Conduct

16.     The parties acknowledge, understand, and agree that pursuant to the United States Sentencing Guidelines ("USSG") § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

5

## Base Offense Levels

17.      The parties agree to recommend to the sentencing court the following base

offense levels:

- As to Count One in Case No. 19-CR-17, level 28 under USSG § 2G1.3(a)(3); and

- As to Count One in Case No. 19-CR-154, level 18 under USSG § 2G2.2(a)(1).

## Specific Offense Characteristics

18.      The parties agree to recommend to the sentencing court the following increases to

the base offense levels:

- As to Count One in Case No. 19-CR-17: two levels under USSG § 2G1.3(b)(2)(A) for knowingly misrepresenting identity; two levels under USSG § 2G1.3(b)(3)(A) for using a computer or an interactive computer service; and two levels under USSG § 2G1.3(b)(4)(A) for committing a sex act or sexual contact.

- As to Count One in Case No. 19-CR-154: two levels under USSG § 2G2.2(b)(2) for material involving a pre-pubescent minor or minor under 12 years of age; four levels under USSG § 2G2.2(b)(4) for material portraying sadistic or masochistic conduct; two levels under USSG § 2G2.2(b)(6) for using a computer or an interactive computer service; and five levels under USSG § 2G2.2(b)(7)(D) for an offense involving 600 or more images.

19.      As to Count One in Case No. 19-CR-154, the parties acknowledge and understand

that the government will recommend to the sentencing court a five-level increase to the base

offense level under USSG § 2G2.2(b)(5) for engaging in a pattern of sexual abuse of a minor. If

the sentencing court determines that the increase applies, the parties agree to recommend to the

sentencing court that the offenses are grouped together under USSG § 3D1.2(c).

20.      The parties acknowledge and understand that pursuant to USSG § 4B1.5(a), the

government will recommend to the sentencing court that a five-level increase applies to the

offense level determined under Chapters Two and Three of the sentencing guidelines, based on

6

the defendant's conviction of a covered sex crime and engaging in a pattern of prohibited sexual conduct, as exclusively set forth in Count One in Case No. 19-CR-17.

## Acceptance of Responsibility

21.    The government agrees to recommend to the sentencing court a two-level decrease for acceptance of responsibility as authorized by USSG § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under USSG § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by USSG § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

22.    The parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

23.    Other than set forth in this agreement, the parties agree there are no additional specific offense characteristic or cross-references within the sentencing guidelines that apply to the offenses of conviction, and there are no additional adjustments within Chapters 3 to 5 of the sentencing guidelines that function to increase the guideline sentencing range for the offenses of conviction.

24.    The parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

25.    The government agrees to recommend to the sentencing court an aggregate sentence of 240 months' imprisonment. The government further agrees to recommend to the

7

sentencing court that the federal sentence run partially concurrent with the defendant's current state sentence of 6 years' imprisonment, which was imposed upon revocation of the defendant's extended supervision in Manitowoc County Case No. 12-CF-130. The government agrees not to recommend a specific time period for the partially concurrent sentence.

**Court's Determinations at Sentencing**

26.     The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

27.     The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty pleas solely as a result of the sentence imposed by the court.

**FINANCIAL MATTERS**

28.     The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in

8

the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

29.     The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

### Restitution

30.     The defendant acknowledges and agrees to pay restitution as ordered by the court in Case No. 19-CR-17 to the victim of Count One, Minor Female A ("MF-A"), as referenced in Attachment A, and jointly and severally with Minor Female A ("MF-A") to the victim of Count Three, Adult Female A ("AF-A"), as referenced in Attachment A. The defendant also agrees to pay restitution as ordered by the Court in case number 19-CR-154 to the victims.  The defendant does not waive any challenge and hearing to the propriety and amount of restitution as to any victim.

31.     Pursuant to 18 U.S.C. § 3663A(a)(3), the defendant agrees to pay restitution to "Adult Female A"—the victim of the offense alleged in Count Three in Case No. 19-CR-17 as referenced in Attachment A—even though the defendant will not be convicted or otherwise sentenced for the offense.

32.     Pursuant to 18 U.S.C. § 3663, the defendant agrees to the entry of a restitution order for the identified victims of the conduct described in the respective charging instruments, Attachment A, and any relevant conduct, subject to his right to challenge and a hearing concerning the propriety and amount of restitution to any victim. The defendant agrees that they are "crime victims" under 18 U.S.C. § 3771 and are therefore afforded all enumerated rights

9

under that section. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable ten days prior to sentencing.

33.     The defendant understands that because restitution for the offenses is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

### DEFENDANT'S WAIVER OF RIGHTS

34.     In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

a.    If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b.    If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d.    At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is

10

relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e.  At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

35.  The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

36.  Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his convictions or sentence in this case and further waives his right to challenge his convictions or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. The defendant's waiver of appeal and post-conviction challenges applies only and exclusively to any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines, (3) the sentence is substantively unreasonable, and (4) any restitution order as to the dismissed Count Three in Case No. 19-CR-17 is infirm.  The defendant expressly reserves, and this waiver does not extend to, an appeal or post-conviction motion, including but not limited to a motion pursuant to 28 U.S.C. §2255, based on

11

any other issue, including (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, (4) procedural error at sentencing, such as the application of various sentencing guideline provisions to the offense conduct, (5) any restitution order as to Count One in each case, or (6) a claim that the plea agreement was entered involuntarily.

### MISCELLANEOUS MATTERS

37.     The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

38.     The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

39.     Pursuant to 18 U.S.C. § 3583(d), the defendant has been advised and understands the court shall order as a mandatory condition of supervised release, that the defendant comply with state sex offender registration requirements. The defendant also has been advised and understands that under the Sex Offender Registration and Notification Act, a federal law, he must register and keep the registration current in each of the following jurisdictions: the location of his residence; the location of his employment; and, if he is a student, the location of his school. Registration will require that the defendant provide information that includes, name, residence address, and the names and addresses of any places at which he will be an employee or

12

a student. The defendant understands that he must update his registration not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations may subject him to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine and/or imprisonment.

40.    The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

<strong><u>EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT</u></strong>

41.    The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the

13

defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

42.     The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

Case 1:19-cr-00017-WCG   Filed 08/29/19   Page 14 of 22   Document 19

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 08/29/19

ZACHARY S. GAUTHIER
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 8.29.19

THOMAS G. WILMOUTH
Attorney for Defendant

For the United States of America:

Date: 8/29/19

MATTHEW D. KRUEGER
United States Attorney

Date: 8-29-19

TIMOTHY W. FUNNELL
Assistant United States Attorney

15

On August 6, 2018, officers in Manitowoc County, Eastern District of Wisconsin, received a runaway-child and theft complaint from Adult Female A ("AF-A"). AF-A reported that she has legal custody of her 15-year-old granddaughter, Minor Female A ("MF-A"), who ran away from AF-A's Manitowoc County home sometime after 11:00 p.m. on August 5, 2018. AF-A also reported that someone took $32,000 from her safe, and that MF-A knew where the safe's key was kept. AF-A had divided the cash inside the safe into envelopes labeled "10,000" (containing $10,000) and "Jeep Money" (containing insurance proceeds). AF-A further reported that on August 4, 2018, a person she identified as "Derek" came to her home, picked up MF-A, and brought MF-A home that day at about 10:00 p.m. AF-A described "Derek" as a white male in his early 20s who was purportedly looking for someone to babysit his daughter.

Based on the information provided by AF-A, a Manitowoc County detective accessed MF-A's Facebook page and observed that on August 4, 2018, a picture was posted of MF-A and an adult male identified in the posting as "Zachary Scott." The male was Manitowoc County resident Zachary Scott Gauthier. When the detective showed Gauthier's picture to AF-A, she recognized him as the man who came to her house that she identified as "Derek."

On August 6, 2018, Gauthier went to a car dealership in northern Wisconsin and bought a 2008 Ford Mustang. Gauthier paid $4,000 in cash for the Mustang. He was traveling with MF-A and his seven-year-old daughter ("DG"). Gauthier also traded in his Toyota Camry at the dealership. When cleaning out Gauthier's Camry, the salesman found empty envelopes labeled "10,000" and "Jeep Money."

On August 7, 2018, the Manitowoc County detective made a recorded call to Gauthier's known mobile number. Gauthier told the detective that he was on vacation in northern Wisconsin and traveling with him was DG. When the detective asked about MF-A, Gauthier said that he had known MF-A for about a week, he wanted MF-A to babysit DG, and he knew that MF-A was 15 years old. Gauthier claimed that his last contact with MF-A was August 4, 2018, when he dropped her off at her grandmother's residence. At that time, MF-A was also traveling with Gauthier.

On November 2, 2018, officers in Mississippi observed the Ford Mustang that Gauthier bought in northern Wisconsin. MF-A was driving the Mustang and DG was the sole passenger. MF-A stopped the car at a restaurant and officers arrested her. MF-A reported that she and DG had left Gauthier two days earlier in Jasper, Alabama.

Based on the information provided by MF-A, on November 2, 2018, officers in Alabama arrested Gauthier at a rented trailer in Jasper. Inside the trailer, officers found and seized multiple items including mobile phones.

On November 5, 2018, MF-A provided an audio-recorded interview to an FBI task force officer. MF-A said that throughout their trip, she and Gauthier engaged in sexual activity, including sexual intercourse. MF-A said that she met Gauthier on an online dating app called "Skout"; Gauthier would pick her up when she snuck away from her grandmother's residence; and he knew she was

15 years old and was fine with it. She told Gauthier about her grandmother's safe, from which she ultimately took $28,000 when she ran away with him. They spent the stolen money on a car, clothes, food, hotels and other living expenses. MF-A said that they first drove near the Wisconsin/Minnesota border where they stayed in a hotel for a few days, and from there, they drove through North Dakota, South Dakota, and Texas before reaching Jasper, Alabama, on or about September 7, 2018. They stayed in Jasper until she left with DG. MF-A said that during the trip, they bought three prepaid iPhones and three or four prepaid Samsung phones, which they discarded in ditches.

On November 6, 2018, Gauthier waived his *Miranda* rights and gave a video-recorded statement to officers. Gauthier said that while he was looking for a babysitter for DG, he met MF-A on an online social-media application. He said MF-A's online profile indicated that she was 19 years old but he knew by August 7, 2018, that she was only 15 years old. He said that MF-A convinced him to take her away from Manitowoc because she did not want to be with her family. Gauthier further stated that MF-A told him she had access to money, and she sent photos of the money to him. Gauthier denied telling MF-A to take her grandmother's money. Early during their travel, MF-A counted out money, specifically $100 bills amounting to approximately $28,000. Gauthier said that MF-A had control of the money during their trip.

Gauthier said that before leaving Wisconsin he traded in his car and bought a Ford Mustang with some of the approximately $6,000 of his own money that he had taken on the trip. From there, they drove south along the Wisconsin/Minnesota border, stopping for a night; they went next to South Dakota because MF-A wanted to see the Badlands; and after the Badlands they drove to Texas, where they stayed for a few weeks at a national park and in hotels.

Gauthier said that after Texas, they drove to Alabama and stayed at an Econo Lodge, but he saw a mobile home for rent on Craigslist. They rented the mobile home in Jasper, in the Northern District of Alabama, by paying the first month's rent, last month's rent, and security deposit. Gauthier said that MF-A came up with the idea of changing their names—he became "Storm Stine," MF-A became "Max Stine," and DG became "Tiger." Gauthier tried to buy fake IDs in their new names by emailing someone who posted a video on YouTube with instructions on how to obtain false identification documents. Gauthier attempted to send money to this person on two occasions, but only one transaction for $600 went through and they never received identification in their assumed names.

Gauthier said that throughout the trip, he and MF-A had sex about one to two times per week. Gauthier admitted knowing that MF-A was 15 years old while they were having sex during the trip south. He said that MF-A wanted to get pregnant.

Incident to Gauthier's arrest in Alabama several items indicative of sexual activity were recovered.

Gauthier said the last time he had sex with MF-A was on the hood of the Mustang while it parked outside the trailer in Alabama. He said that he and MF-A twice had sex in the bedroom of the trailer.

One of the mobile phones seized from Gauthier at the time of his arrest in Alabama was an LG

smart phone, which contained a secure digital ("SD") memory card that was manufactured in Taiwan. An SD card enables the user of a smart phone to store digital images and movie files, including those searched for and downloaded by the user from illicit online sources. Gauthier did, in fact, use these devices in this precise manner: first, he used the LG smart phone to knowingly search for and download child pornography using the internet; and second, having successfully obtained the child-pornography files, he stored them on the phone's SD card. The files include visual depictions, including images and videos of minors who had not attained 12 years of age engaged in sexual contact, sexual intercourse, and the lascivious exhibition of their anus, genital, and pubic areas.

As a result, Gauthier knowingly possessed at least 610 image files and six video files containing child pornography. Gauthier did not delete these child-pornography files from the SD card; instead, he stored them among the SD card's active files, which made the files readily accessible for Gauthier to view. The child-pornography files that Gauthier knowingly possessed included the following:

| Partial File Name | Description |
|---|---|
| DSC04651.jpg | A digital image depicting a pre-pubescent female wearing leggings pulled down to her ankles. She is lying down with her legs raised as a male penetrates her exposed genitals with his erect penis. |
| (Children-sf-1man)Pthc-Tara (08Yo)-Tara Gets Molested By A Clown-[New][UK] [00.12.56].avi | A digital video depicting a naked pre-pubescent female wearing only a mask. Her genitals are exposed as she is directed into different positions by a naked adult male wearing only a clown mask and shoes. The male has her perform oral sex on his erect penis and penetrates her genitals with his fingers and erect penis. |

As to Case No. 19-CR-17, "Minor Female A" or "MF-A" refers to the victim of the offenses charged in Counts One and Two of the indictment, and "Adult Female A" or "AF-A" refers to the victim of the offense charged in Count Three of the indictment.

As to Case No. 19-CR-154, law enforcement has identified the following 11 victims of the offense charged in Count One of the information: S.G.; A.C.; A.J.; J.M.; L.S.; D.M-W; M.E.; R.H.; C.A.-1; C.A.-2; and C.K.

**Texas Penal Code § 22.011, Sexual Assault**

(a) A person commits an offense if:

(1) the person intentionally or knowingly:

(A) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent;

(B) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or

(C) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor; or

(2) regardless of whether the person knows the age of the child at the time of the offense, the person intentionally or knowingly:

(A) causes the penetration of the anus or sexual organ of a child by any means;

(B) causes the penetration of the mouth of a child by the sexual organ of the actor;

(C) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

(D) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or

(E) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor.

. . . .

(c) In this section:

(1) "Child" means a person younger than 17 years of age.

. . . .

(f) An offense under this section is a felony of the second degree[.]

**Texas Penal Code § 21.11, Indecency With a Child**

(a) A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex and regardless of whether the person knows the age of the child at the time of the offense, the person:

(1) engages in sexual contact with the child or causes the child to engage in sexual contact; or

(2) with intent to arouse or gratify the sexual desire of any person:

(A) exposes the person's anus or any part of the person's genitals, knowing the child is present; or

(B) causes the child to expose the child's anus or any part of the child's genitals.

. . . .

(c) In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

(1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or

(2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

(d) An offense under Subsection (a)(1) is a felony of the second degree and an offense under Subsection (a)(2) is a felony of the third degree.

**Alabama Criminal Code § 13A-6-62, Rape in the second degree**

(a) A person commits the crime of rape in the second degree if:

(1) Being 16 years old or older, he or she engages in sexual intercourse with a member of the opposite sex less than 16 and more than 12 years old; provided, however, the actor is at least two years older than the member of the opposite sex.

. . . .

(b) Rape in the second degree is a Class B felony.

**Alabama Criminal Code, § 13A-6-67, Sexual abuse in the second degree**

(a) A person commits the crime of sexual abuse in the second degree if:

. . . .

(2) He, being 19 years old or older, subjects another person to sexual contact who is less than 16 years old, but more than 12 years old.

(b) Sexual abuse in second degree is a Class A misdemeanor, except that if a person commits a second or subsequent offense of sexual abuse in the second degree within one year of another sexual offense, the offense is a Class C felony.